NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 08a0548n.06

Filed: September 8, 2008

**Case No. 07-6274**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | |
| **JOE OAKLEY, et al.** | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| v. | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| **CITY OF MEMPHIS,** | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE:  COLE and GRIFFIN, Circuit Judges; and SARGUS, District Judge.**[*]

**SARGUS, District Judge.**    Plaintiffs-Appellants appeal the decision of the district court granting summary judgment in favor of Defendant-Appellee, the City of Memphis, and dismissing Appellants' discrimination claims.  For the reasons that follow, the decision of the district court is affirmed.

**I.**

The 40 appellants are a racially mixed group of male and female lieutenants in the Memphis Police Department ("MPD").  Appellants allege that their employer, Appellee, the City of Memphis ("City"), discriminated against them on the basis of gender and race by cancelling a

_____

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

valid, non-discriminatory promotional process conducted in 2005, because white male lieutenants scored disproportionately higher than black and female lieutenants. Appellants claim that the City violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 1983 ("§ 1983"), and the Tennessee Human Rights Act ("THRA"), Tenn. Code. Ann § 4-21-401.

The parties submitted a Joint Statement of Undisputed Material Facts, upon which the trial court relied in deciding summary judgment as a matter of law in favor of the City. (Appx. at 147). The relevant undisputed facts are as follows. Civil service ranks within the MPD are patrol officer, sergeant, lieutenant, major, and inspector. To achieve any rank above patrol officer, the City requires officers to take promotional exams designed to evaluate their competency.

The MPD actively recruits law enforcement officer candidates and emphasizes the opportunity to compete for promotions within the MPD as a benefit to officer candidates. Sometime before May 2005, the City determined that there was a need for additional Majors within the MPD. The City hired Barrett and Associates of Cuyahoga Falls, Ohio to prepare and administer a promotional exam, and to recommend candidates for promotion from Lieutenant to Major based upon the test results.

Barrett and Associates had extensive experience in writing "content-valid" tests for use in law enforcement agencies' promotional processes. "Content-valid" exams include only questions that are relevant to the job duties of the position for which the candidate is applying. Barrett and Associates relied on subject matter experts, officers within the MPD at the rank of Major or Inspector, to help develop the test and to review the promotional process to ensure that the areas tested were relevant. In developing the process, Barrett researched alternative selection

procedures and determined that no content-valid alternatives existed with lesser risk of adverse impact to minority applicants.

Barrett and Associates administered the MPD promotional process on May 15 and May 16, 2005, with Dr. Gerald Barrett personally supervising. After the completion of the promotional exam, Barrett prepared a ranking of the participants. Appellants ranked between 1 and 101, and each met the minimum qualifications for the rank of Major. Despite their qualifications, the City declined to promote any lieutenants, because the City Director of Human Resources, Dr. Essex, believed that the test had a significant adverse impact on African-American and female candidates.

The Director referred the question of adverse impact to the Memphis City Attorney, who opined that the promotional process did not meet the EEOC's guidelines or comply with prior court decisions. The City Attorney agreed that the test had an adverse impact upon African American and female candidates, and the City Director cancelled the Majors' promotional process without performing any additional validation review. The City took no steps to determine whether the promotional process was in fact "content-valid," and did not ask Barrett to analyze the results for adverse or disparate impacts.

The Director of Police Services issued a memorandum which stated:

> In light of serious concerns regarding the validity of this test and the results, we cannot proceed with the acceptance of the Majors' results or promotions of individuals based on this process. Therefore, this Majors' process is closed and a new process will need to be instituted and promotions made from the new process once the test is developed and given and the rank order list is validated.

(Appx. at 46).

At least 43 positions for Majors remain open in the MPD. The City is still in immediate need of additional supervisors of the rank of Major, and the MPD continues to seek and accept applications.

Plaintiffs' Amended Complaint, filed August 18, 2006, alleged intentional discrimination against the City, and sought declaratory and injunctive relief and damages. On September 4, 2007, the trial court granted Defendant's motion for summary judgment, dismissing Plaintiffs' claims. On September 27, 2007, Plaintiffs timely filed their Notice of Appeal.

## II.

The United States District Court for the Western District of Tennessee, Western Division had subject matter jurisdiction over Appellants' Title VII, § 1981, and § 1983 claims under 28 U.S.C § 1331 and 28 U.S.C § 1441. The district court exercised supplemental jurisdiction over Appellants' THRA claim under 28 U.S.C. §1367(c). This Court has jurisdiction under 28 U.S.C. §1291.

The Court of Appeals reviews a district court's grant of summary judgment *de novo*. *O'Neill v. Kemper Insurance Comp*., 497 F. 3d 578, 581 (6th Cir. 2007). Under Fed. R. Civ. P. 56(c):

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A fact is "material" if the dispute over it might affect the outcome of the lawsuit under the governing

law. *Id.* In determining whether there are genuine issues of material fact, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *Id.*

### III.

The district court correctly held that this case turns on the narrow legal issue of whether Title VII, 42 U.S.C. §2000e, applies to the employment action taken by the City, specifically its decision *not* to enforce a promotion process that would adversely impact a minority group.[1]

Title VII prohibits employment practices that are "fair in form but discriminatory in operation." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431 (1971). Two theories are available to a plaintiff to prove a case of unlawful employment discrimination: disparate treatment and disparate impact. *Dunlap v. TVA*, 519 F.3d 626, 630 (6th Cir. 2008); *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir. 1981). Appellants contend that, because the City did not first prove that the promotion exam resulted in unlawful disparate impact before "preemptively" cancelling the promotional process, it intentionally discriminated against them on the basis of gender and race.

*Disparate impact*

The disparate impact theory requires a plaintiff to demonstrate that a facially neutral employment practice falls more harshly on one group than another, and that the practice is not justified by business necessity. *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 92 (6th Cir. 1982); 42 U.S.C. §2000e-2(k)(1)(A)(I) (Discrimination occurs when an employer "uses a particular employment practice that causes a disparate impact on the basis of race, color,

---

[1] The district court properly applied the Title VII framework to Plaintiffs' claims under 42 U.S.C. §§1981, 1983, and the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-401. *See Sperle v. Mich. Dept. of Corrections*, 297 F.3d 483, 490 (6th Cir. 2002); *Isabel v. City of Memphis*, No. 01-2533 ML/BRE, 2003 WL 23849732 at *1 (W.D. Tenn. 2003) (citing *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn. Ct. App. 1984)).

5

religion, sex, or national origin and fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity. . . .") The Supreme Court has devised a three-part burden-shifting test to determine whether an unlawful disparate impact exists in a particular case. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975). First, the plaintiff must establish a prima facie case of discrimination -- i.e., the plaintiff must establish that an adverse impact has occurred. If he or she succeeds, the employer must show that the protocol in question has "a manifest relationship to the employment." *Griggs*, 401 U.S. at 431. The plaintiff must then show that other tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect. *Albemarle*, 422 U.S. at 425, 432.

A prima face case is established when: (1) the plaintiff identifies a specific employment practice to be challenged; and (2) through relevant statistical analysis proves that the challenged practice has an adverse impact on a protected group. *Johnson v. U.S. Dep't of Health and Human Servs.*, 30 F.3d 45, 48 (6th Cir. 1994) (citing *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 907-08 (6th Cir. 1991)).

Appellants concede, for purposes of their appeal, that the MPD's promotional exam resulted in adverse impact to African American and female applicants. (Br. at fn. 4). They contend, however, that "adverse" impact does not equal unlawful "disparate" impact in the absence of formal findings of such. The district court found that disparate impact was obvious, even without a formal analysis, based on the review by the City's Director of Human Resources. Dr. Essex consulted with Barrett and the City Attorney, and determined that if promotions were made based on the exam results, the black-to-white selection ratio would fail the EEOC's "4/5ths

6

Rule."[2]  No formal analysis is required to determine that, of the 115 test takers, 61 were black, 54 were white, and 24 were women; of the top 28 scorers, 21 were white, 7 were black, and 1 was female.  Even if the MPD promoted the top 70 candidates, the race ratio would fall 20% below the EEOC's 80% requirement.

Appellants assert that the City should have performed "further analysis" before abandoning the promotional process.  Neither Title VII nor agency guidelines require a formal finding of disparate impact.  The law does not require an employer to validate or certify a process "where they cannot pinpoint its deficiency explaining its disparate impact under the four-fifths rule simply because they have not yet formulated a better selection method."  *Ricci v. Destefano, 554 F.Supp. 2d 142, \*38* (D. Conn. 2006), *aff'd*, 530 F.3d 88 (2d Cir. 2008).

In short, had the City carried through with the promotions based on the test results, it faced a significant risk of violating Title VII based on the disparate impact of the facially neutral process.

*Disparate treatment*

The disparate treatment doctrine, articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), requires a plaintiff to demonstrate that an employer has treated some people less favorably than others because of their race, color, religion, sex or national origin.  A plaintiff must establish discriminatory motive either by direct evidence or by inference based on a prima facie showing of discrimination.

Under a disparate treatment theory, "proof of discriminatory motive is critical.  However, in some cases it may be inferred from the mere fact of differences in treatment."  *Rowe v.*

---

[2]  The EEOC Guidelines state: "a selection rate for any race, sex, or ethnic group which is less than four-fifths (4/5) (or eighty percent) of the rate for the group with the highest rate will generally be regarded . . . as evidence of adverse impact."  29 C.F.R. §1607.4(d) (1986).

*Cleveland Pneumatic Co.*, 690 F.2d 88, 92 (6th Cir. 1982).  In the absence of direct evidence, a plaintiff may establish a prima facie case of discrimination by showing (1) that she is a member of a protected group, (2) that she was qualified for the position at issue, and (3) that she was treated differently than comparable employees outside of the protected class.  *See McDonnell-Douglas*, 411 U.S. at 802; *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).  Plaintiffs alleging reverse discrimination must prove "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority."  *Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249, 255 (6th Cir. 2002).

As the district court explained at length, Title VII prohibits the discriminatory preference of one group over another.  A viable Title VII claim first and foremost requires proof of discrimination, that is, evidence that an employer preferred one racial group over another or treated an employee differently because of his race.  Appellants claim to have direct evidence of discrimination, based on the testimony of Dr. Essex that the City cancelled the promotional process because "not enough minority officers scored well enough to be promoted."  (Br. at 20.)  Therefore, Appellants claim, the City admittedly exercised preferential treatment in favor of female and African-American applicants who did not pass, to the detriment of male, female, Caucasian and African-American applicants who performed well on the exam.  The City did not promote any of the participants, however, and the racially mixed group of male and female Appellants did not establish that any individual or group, majority or minority, received different or preferential treatment.

As set out above, discriminatory intent is critical to a claim for disparate treatment.  *Rowe*, 690 F.2d at 92.  Here, the undisputed evidence established that the City's intent in cancelling the promotional process was to *prevent* the potential for preferential treatment of one

race or gender over another. Appellants have not established that any discrimination occurred, and cannot state a claim for discrimination under Title VII.

The case of *Ricci v. Destefano* is factually analogous and persuasive authority. 554 F. Supp. 2d 142.[3] In *Ricci*, the New Haven, Connecticut Civil Service Board refused to certify the results of two promotional exams administered to candidates for the positions of Lieutenant and Captain in the New Haven Fire Department. The results of both tests, like the MPD's test at issue in this case, failed the EEOC's "four-fifths" rule, crafted to measure claims of disparate impact. *Id.* at *30-31.

The *Ricci* plaintiffs, seventeen white candidates and one Hispanic candidate who passed the promotional exams, filed a Title VII and equal protection claim, challenging the Board's refusal to certify the results of the test. The plaintiffs argued that "defendants' professed desire to comply with Title VII's anti-disparate-impact requirements was in fact a pretext for intentional discrimination against white candidates." *Id.* at *24. The district court applied the *McDonnell Douglas* analysis and concluded that "Defendants' motivation to avoid making promotions based on a test with a racially disparate impact . . . does not, as a matter of law, constitute discriminatory intent, and therefore such evidence is insufficient for plaintiffs to prevail on their Title VII claim." *Id.* at *51.

The court was not persuaded that in the absence of a validation study, the Board's reliance on the disparate impact of the test was a pretext for discrimination. Rather, "professionally developed and properly validated tests are *a defense* to a claim of disparate impact"; the "statute itself does not *require* employers to implement or continue to use any test

---

[3]
The Court of Appeals for the Second Circuit affirmed the district court's opinion, "for the reasons stated in the thorough, thoughtful, and well-reasoned opinion of the court below." *Ricci v. DeStefano*, 530 F.3d 87 (2d Cir. 2008).

simply because it is professionally developed, nor does it provide a defense to an employer who 'use[s]' a test with a discriminatory impact where other less-discriminatory, equally effective, alternatives are available." *Id.* at *33 (citing 42 U.S.C. § 2000e-2(h)) (emphasis added). EEOC Guidelines likewise provide guidance on the use of validation tests, but "[t]he guidelines do not require or mandate a validity study where an employer decides *against* using a certain selection procedure that manifests this [disparate] impact and plaintiff's argument that defendants violated Title VII by refusing to conduct a validity study before rejecting testing results is thus unpersuasive." *Id.* at *36 (emphasis in original).

Finally, the court rejected the plaintiffs' assertion that the defendants' desire for diversity was prohibited reverse discrimination under Title VII. Although the Board considered race in deciding not to certify the results of the two exams, the decision was not discriminatory because it affected all candidates equally. *Id.* at *54.

Appellants herein have not demonstrated a genuine issue of material fact as to whether the City discriminated against them, in violation of Title VII, 42 U.S.C. §§1981, 1983, or the THRA, by cancelling a promotional process that, had it been implemented, would have resulted in an unlawful disparate impact.

**IV.**

Based upon the foregoing, the judgment of the district court is **AFFIRMED**.