**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0372n.06

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

No. 12-6027

**FILED**
*May 19, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOE OAKLEY, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF MEMPHIS, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:   BOGGS and ROGERS, Circuit Judges; and STEEH, District Judge.[*]

STEEH, District Judge.

The plaintiffs-appellants are police officers who appeal the remedies awarded in this Title VII race and gender discrimination case. Plaintiffs challenge the award of backpay as insufficient. Plaintiffs also appeal the denial of promotions for two of the 28 plaintiffs, and the denial of damages for alleged lost promotional opportunities. Finally, plaintiffs challenge the hourly rate used by the district court in determining attorney fees. Finding no abuse of discretion in the award of remedies and attorney fees, we affirm.

### I. Factual and Procedural Background

This race and gender employment discrimination case was originally filed by forty white, African-American, male, and female lieutenants in the Memphis Police Department ("MPD") who alleged that they were wrongfully denied promotion to the rank of major. Plaintiffs claim

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

they would have been promoted based on the results of a 2005 competitive examination but lost their entitlement when the City of Memphis (the "City") decided to cancel the promotional process because a disproportionate number of white, male lieutenants scored higher on the examination than African-American and female lieutenants. Plaintiffs claimed that by canceling the promotional process and ignoring the 2005 examination results, the City violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401.

The district court granted summary judgment for the City, finding that the cancellation of the 2005 promotional process was not discriminatory, and plaintiffs appealed. This court affirmed the decision of the district court. *Oakley v. City of Memphis*, 315 F. App'x 500 (6th Cir. 2008). The Supreme Court granted certiorari, vacated the judgment, and remanded the case for further consideration in light of *Ricci v. DeStefano*, 557 U.S. 557 (2009), decided the same day. Upon remand in this case, the district court granted plaintiffs' motion for summary judgment. Plaintiffs' counsel then moved for Title VII remedies and attorney fees.

To understand the remedies awarded, a brief summary of the ranked positions within the MPD is in order. At the time the lawsuit was filed, the civil-service ranks within the MPD were patrol officer, sergeant, lieutenant, major, and inspector (since 2008, known as lieutenant colonel). The City Charter requires that officers in the civil-service ranks be promoted based on their performance on competitive examinations. Next in the chain of command are appointed positions within the police force which are, in rank order: colonel (a rank created by the director in February 2008), deputy chief, deputy director, and director (also known as "chief"). Promotions to appointed positions do not require competitive promotional examinations. The City treats lieutenants as nonexempt employees subject to the provisions of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, paying them overtime. Majors, on the other hand, are supervisors and receive no overtime pay. Police lieutenants also receive additional compensation, known as "out-of-rank pay," for performing duties normally done by their superior officers. Only those in the position of major or above are eligible for appointment to the rank of colonel.

After granting plaintiffs' motion for summary judgment, the district court's remedies award included: promoting most plaintiffs to the position of major,[1] awarding backpay, awarding retroactive adjustment of pension credits, and awarding attorney fees and costs. In awarding backpay, the district court first calculated the difference between the base pay of a major and the base pay of a lieutenant. The district court then discounted the award by the amount that each lieutenant had earned in overtime and out-of-rank pay, on the basis that, as majors, plaintiffs would not have been entitled to overtime pay. At the remedies hearing, Deputy Chief Don Boyd testified that lieutenants are rarely required to work overtime, and that the decision to do so is usually left to an individual officer's discretion. Boyd also testified that all positions, including the rank of major, require some overtime work, and that whenever an officer responds to a scene or incident, or covers an event which lasts longer than his or her shift, he or she is expected to work until its conclusion. Because the district court deducted overtime pay when calculating backpay, some plaintiffs who had worked a significant amount of overtime received very little or no recovery, while those who had worked little overtime received as much as $50,000.

The district court also denied promotion and backpay to appellant Jerry Bouchillon, as he ranked only 88th on the 2005 examination, which was not high enough to qualify for promotion to major. Although his examination results did not qualify him for promotion, he argued to the

[1]Based on the district court's Remedies Order, the MPD promoted 43 lieutenants who scored in the top 65 on the 2005 examination to the rank of major.

district court, and again here on appeal, that he is entitled to such relief as he now ranks in the top tier of 2005 applicants for major since many of those officers ranking above him either elected not to challenge the City's actions or have since dropped out of this lawsuit. The district court rejected this argument, finding that it would be improper to reorder the results of the competitive examination based on who was remaining in the lawsuit, and it would be inequitable to put him in a better position than he would have occupied had the City not unlawfully invalidated the 2005 results. For the same reason, the district court denied backpay to appellant Timothy E. Cook, Sr. who ranked 74th on the promotional examination.[2]

In addition to the remedies of promotion and backpay, plaintiffs below sought damages for "lost promotional opportunities." They argued that since they were wrongfully denied promotion to the rank of major in 2005, they were also likely denied further promotion up the chain of command. They sought a ruling that all plaintiffs should be allowed to retire at the rank of colonel, regardless of their rank at the time of retirement. In their pre-hearing brief on the issue of remedies, however, plaintiffs admitted that "it is virtually impossible to determine when and who would have been promoted to ranks above and beyond major." The district court rejected plaintiffs' request for damages for "lost promotional opportunities," finding that the remedy sought was too speculative, especially in light of the fact that promotional opportunities become much more limited the higher up the promotional pyramid an individual officer climbs.

The district court also granted plaintiffs' motion for attorney fees. The district court found that the hours worked sought by plaintiffs' counsel were reasonable, but reduced the hourly rate claimed, finding that it was excessive in light of awards to attorneys in the Memphis

---

[2]Because Cook was promoted to the rank of major on April 8, 2008 as part of a separate promotional process, the issue of whether he should be promoted to major as a Title VII remedy was not before the court.

area in comparable cases. Lead counsel argued that the $375 hourly fee he sought was reasonable and had been approved recently by a bankruptcy court. The district court considered the prevailing market rates for civil-rights attorneys in the Memphis area and cited four recent cases awarding fees in the $200 to $275 per hour range, including an award to a civil-rights practitioner with thirty years of experience. The district court set lead counsel's hourly rate at $275 and co-counsel's hourly rates at $225 and $180. Based on these calculations, the district court entered an award of attorney fees in the amount of $383,191.25 for the period ending on October 12, 2010.

## II. Analysis

### A. Backpay

We review a district court's decision to award backpay and the district court's calculation of backpay for abuse of discretion. *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 678 (6th Cir. 2008) (citing *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1233 (6th Cir. 1996)).[3] "A back pay award should make the claimant[s] whole, that is, [it should] place [them] in the position [they] would have been in but for discrimination." *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013) (quotations and citations omitted).

---

[3]Plaintiffs argue that the *de novo* standard of review applies to all issues other than the district court's denial of lost promotional opportunities. Even if we were to apply the *de novo* standard of review, our decision would remain the same.

Where a court finds that invidious discrimination has taken place in violation of Title VII, the district court has broad discretion to fashion remedies to make the victims whole, including discretion to award backpay. *Isabel v. City of Memphis*, 404 F.3d 404, 414 (6th Cir. 2005). Backpay is an equitable remedy that is "presumptively favored in employment discrimination cases." *Suggs*, 72 F.3d at 1233 (citing *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)). Once the court decides to award backpay, the formula of computation is within its sound discretion. *Thornton v. East Tex. Motor Freight*, 497 F.2d 416, 421 (6th Cir. 1974). Title VII remedies aim "to make the victims of unlawful discrimination whole by restoring them, so far as possible . . . to a position where they would have been were it not for the unlawful discrimination." *Ford Motor Co. v. EEOC,* 458 U.S. 219, 230 (1982) *(*citing *Albermarle*, 422 U.S. at 421) (internal quotation marks omitted).

Under Title VII, courts are required to deduct interim earnings from backpay. Specifically, Title VII provides:

> Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e-5(g)(1). "Interim earnings" are defined to include "earnings from jobs that could not have been worked had no discrimination occurred." *Chesser v. Illinois*, 895 F.2d 330, 338 (7th Cir. 1990). In *Chesser*, the Seventh Circuit ruled that the district court properly calculated backpay by deducting amounts the wrongfully discharged state trooper earned moonlighting as a private investigator, where such employment was prohibited for state troopers. *Id.* at 338. Similarly, this court has held that moonlighting earnings must be deducted as "interim earnings" from a Title VII backpay award, when the position for which claimants were wrongfully denied promotions required long hours that would have precluded moonlighting. *Thornton*, 497 F.2d at 422. In *Reilly v. Cisneros*, 835 F. Supp. 96, 103 (W.D.N.Y. 1993), *aff'd*,

44 F.3d 140 (2d Cir. 1995), the court held that interim earnings include overtime compensation as § 2000e-5(g)(1) does not distinguish between standard and overtime pay.

The district court in this case ruled that overtime paid to lieutenants constituted interim earnings deductible from backpay, relying on *Mendoza v. City of New Orleans*, No. 98-2868, 2001 WL 1558313 (E.D. La. Dec. 5, 2001), *aff'd*, 61 F. App'x 918 (5th Cir. 2003). In *Mendoza*, police officers with the rank of lieutenant were wrongfully denied promotion to the rank of captain. *Id.* at *1. As in this case, lieutenants were paid for overtime, but captains were not. *Id.* Because the plaintiffs earned more as lieutenants than they would have earned had they been promoted to captain, based on their overtime compensation, the district court denied plaintiffs' request for backpay. *Id.* at *4. The district court reasoned that deducting wages earned for overtime was equitable inasmuch as plaintiffs would have been unable to earn overtime as captains, but still would have been required to perform some overtime work. *Id.*

There was no abuse of discretion in deducting overtime compensation from backpay. The decision to deduct overtime pay where majors were prohibited from receiving such compensation comports with the remedial purpose of Title VII to make victims of employment discrimination whole. Plaintiffs argue that overtime compensation should be treated the same as moonlighting income, which they contend is not deductible from a backpay award. This is true in circumstances where an employee could have earned the additional income while continuing his former employment. *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 520 (6th Cir. 2009) (part-time earnings with National Guard not deducted where employee also worked for Guard prior to discharge); *see also Lilly v. City of Beckley*, 797 F.2d 191, 196 (4th Cir. 1986); *Behlar v Smith*, 719 F.2d 950, 954 (8th Cir. 1983). This court has also held that moonlighting income *must* be deducted from backpay where the employee could not have held that moonlighting job at the

same time as the job he lost because of discrimination. *Thornton*, 497 F.2d at 422; *see also Chesser*, 895 F.2d at 338; *Whatley v. Skaggs Co.,* 707 F.2d 1129, 1139-40 (10th Cir. 1983); *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 455 (5th Cir. 1973). Reducing the award is also consistent with the underlying purpose of a Title VII backpay award, which is to make the victim of employment discrimination "whole for injuries suffered" and not to punish the employer. *Albermarle*, 422 U.S. at 418. As in the cases cited *supra*, plaintiffs here could not have earned overtime compensation had they been promoted to major based on the 2005 examination; thus, the district court properly deducted those earnings in calculating backpay.

Plaintiffs argue that to deduct overtime pay from backpay penalizes them for the extra leisure time they gave up in order to work hours beyond a 43-hour work week. At the remedies hearing, however, Deputy Chief Don Boyd testified that all ranks are required to work overtime, albeit without additional compensation for those employed as majors or above. Deducting both base pay and overtime earned as lieutenants means that some plaintiffs will recover as much as $50,000, while others who worked a significant amount of overtime will recover little to nothing. Such a result is equitable because it returns the officers to the place they would have been had no discrimination occurred. This court has ruled that where an employee earns more in her new position than she would have earned in the position that she was denied based on discrimination, § 2000e-5(g)(1) requires that no award of backpay shall be made. *EEOC v. New York Times Broad. Serv.*, 542 F.2d 356, 359 (6th Cir. 1976).

Plaintiffs argue that the net effect of deducting overtime pay means the concerned officers worked for free. This argument does not account for the undisputed fact that the City has already paid plaintiffs for the overtime worked. In fact, some of the plaintiffs actually earned more as lieutenants working overtime than they could have earned if they had been promoted to

major. To ignore those earnings in calculating backpay would elevate plaintiffs to a better position than they would have occupied if no discrimination had occurred. Accordingly, the district court properly treated those earnings as "interim earnings" under § 2000e-5(g)(1) and deducted those wages from backpay.

The same principles apply to out-of-rank pay. When lieutenants worked as supervisors, they were paid an additional five percent in out-of-rank pay as though they had been majors. The district court properly deducted out-of-rank pay from backpay, as plaintiffs were paid precisely what they would have been paid if no discrimination in promotions had taken place. In sum, the district court acted within its discretion in calculating backpay by deducting those wages that the officers earned as lieutenants, including both their base salary and any overtime or out-of-rank hours worked.

**B. Lost Promotional Opportunities**

"Upon a finding of invidious discrimination in violation of Title VII, a district court has 'wide discretion' to impose equitable remedies so as 'to fashion the most complete relief possible' designed to 'make the victims of unlawful discrimination whole.'" *Shore v. Federal Express Corp.*, 42 F.3d 373, 377 (6th Cir. 1994) (quoting *Albermarle*, 422 U.S. at 421). On appeal, we review a district court's imposition of equitable remedies in a Title VII case for abuse of discretion. *Id.* at 377-78.

Plaintiffs contend that, as a remedy for discrimination, the district court should have awarded all plaintiffs promotion to the rank of colonel at the time of their retirement and all benefits incident to that rank. The district court denied such damages, finding that this argument was based on underlying assumptions that were too remote and speculative to merit judicial relief. Plaintiffs have cited no authority in support of their claim for damages for "lost

promotional opportunities." In a related context, this court has held that, when the district court calculates future earnings in order to calculate front pay in a Title VII case, "some basis must appear in the record for such an award" and an award may not be based on sheer "guesswork." *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1160 (6th Cir. 1985). In this case, the assumption that all plaintiffs would have been promoted to the rank of colonel by the time of their retirement but for the discrimination is belied by the record.

As the district court aptly noted, the number of promotional opportunities diminishes as an officer rises through the chain of command. Moreover, promotion to the rank of colonel is based on appointment, not competition, and there is simply no guarantee that the Chief, who wields largely unfettered discretion in making such appointments, would have promoted any particular individual. In fact, at the time of the remedies hearing before the district judge on November 17, 2010, only twelve colonel positions were available. The district court did not abuse its discretion in denying plaintiffs' request for damages for "lost promotional opportunities."

**C. Lost Promotions and Back Pay of Bouchillon and Cook**

We review the district court's decision to deny promotion and backpay to Bouchillon and Cook under the abuse-of-discretion standard. *Shore*, 42 F.3d at 377-78. The parties agree that both Bouchillon and Cook tested below the promotional range on the 2005 examination. In 2008, as part of another promotional process, Cook was promoted to major, but Bouchillon was not. On appeal, Bouchillon and Cook seek to be promoted to major as of 2005 and seek backpay. The district court acted well within its discretion when it denied the requests of Bouchillon and Cook to be promoted based on their 2005 examination results, which clearly fell below the cut-off score needed for promotion.

**D. Attorney's Fees**

Under Title VII, a district court has discretion to award a prevailing party "a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). We review a district court's determination of the amount of attorney's fees under Title VII for an abuse of discretion. *Serrano v. Cintas Corp.*, 699 F.3d 884, 905 (6th Cir. 2012), *cert. denied*, 134 S. Ct. 92 (2013). "This deference, 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 909 (6th Cir. 1991) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Fuhr v. School District of the City of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004) (citations omitted). In determining fees, a district court should consider "the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

In determining fees, the district court below properly used the traditional lodestar method of considering the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). Lead plaintiffs' counsel sought an hourly rate of $375 and his co-counsel sought hourly rates of $320 and $270. The district court considered the rates charged by other attorneys in the Memphis area prosecuting similar civil-rights and employment-discrimination cases and found that the rates sought by plaintiffs' counsel in this case were substantially higher than those customary rates. The district court found nothing unique about the case to justify a variance from those customary rates.

On appeal, plaintiffs rely on the unpublished opinion of *Doe v. Board of Education of Memphis City Schools*, No. 05-2411 (W.D. Tenn. Jan. 9, 2007), wherein the same judge awarded an hourly attorney's fee in the amount of $425, pursuant to 42 U.S.C. § 1988, in a civil rights action involving the sexual abuse of a minor by a public-school teacher. In so ruling, the district court adjusted the market hourly rate upward based, *inter alia*, on the difficulty and complexity of the subject litigation, the undesirability of the case due to its distasteful subject matter, and the difficulty of the questions presented, including uncooperative witnesses and defendants who were not forthcoming. By contrast, this straightforward race and gender-discrimination suit involved no significant factual dispute and no "undesirable" subject matter.

Plaintiffs' counsel argues that this case was novel and complex based on its long history of appellate review, which included consideration by the Supreme Court. This long procedural history is accounted for in the large number of hours counsel billed on the matter, which the district court found were reasonable. Under our deferential abuse-of-discretion standard, we affirm the district court's determination of attorney fees.

AFFIRMED.